UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

TONY DUFF,

                Plaintiff,

v.

PRISTINE SERVICES, INC., *et al.*,

                Defendants.

19-CV-10423 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Tony Duff brings this action against his alleged former employers, asserting claims of racial discrimination, wrongful termination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000-e, *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. Admin. Code §§ 8-101, *et seq.* ("NYCHRL"). Defendants Island Exterior Fabricators LLC ("Island")[1] and Pristine Services, Inc. ("Pristine") have moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, the Court concludes that Duff has failed to plausibly plead any of his claims and grants the motions to dismiss.

---

[1] Island asserts that Duff has sued the wrong Island entity, and that the correct entity is International Enterprises, LLC. Island Mem. at 2 n. 1.

## BACKGROUND

The Court draws the following facts from Duff's amended complaint, see Dkt. 29, and for the purposes of this motion, accepts them as true, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

Plaintiff Tony Duff is an African American male. Am. Compl. ¶ 4.[2] In October 2017, he was hired by Defendants as a laborer to work on the renovation of LaGuardia Airport ("the LaGuardia Airport Project"). *Id*. ¶ 23. Pristine is a New York based general contractor company that offers temporary union labor and management to various worksites. *Id*. ¶ 6. Island is a New York based subcontractor that specializes in façade and fire-proofing. *Id*. ¶ 10.

One of the questions at issue is whether both of these companies constituted Duff's employers. While working on the LaGuardia Airport Project, Duff wore a Pristine uniform but used tools and machinery that belonged to both Pristine and Island. *Id*. ¶ 25. He was paid by Pristine, which in turn was paid by Island. *Id*. ¶ 24. He alleges that both Pristine and Island directly supervised him, and each company maintained records of his hours worked. *Id*. ¶¶ 26–27. On behalf of Pristine, Duff was supervised by general foreman Tommy Ryder, *id*. ¶ 30, who would provide Duff work assignments. For example, Ryder assigned Duff work as a fire-proofer in a certain area. *Id*. ¶ 31. Duff was allegedly also supervised by Island general foreman Brian Prunty. *Id*. ¶ 33. Duff asserts that Prunty "controlled Mr. Duff's work and assigned him hours and tasks to complete." *Id*. ¶ 33. For example, Duff cites multiple instances in which Duff and Prunty corresponded via text message about the hours Duff and other Pristine employees would work. *Id*. ¶ 34 (text message from Prunty to Duff stating "might have some

---

[2] This opinion uses the following citations: "Am. Compl." for Duff's amended complaint, Dkt. 29; "Pristine Mem." for Pristine's memorandum in support of its motion to dismiss, Dkt. 32; "Island Mem." for Island's memorandum in support of its motion to dismiss, Dkt. 34; "Pristine Opp." for Duff's memorandum in opposition to Pristine's motion to dismiss, Dkt. 44; "Island Opp." for Duff's memorandum in opposition to Island's motion to dismiss, Dkt. 42; "Pristine Reply" for Pristine's reply, Dkt. 48; and "Island Reply" for Island's reply, Dkt. 49.

work next week on a 4PM- 12 shift"); *id*. ¶ 35 (text message from Prunty to Duff informing Duff that a job that fell through, but that "when something comes up I will shoot you a text"); *id*. ¶ 36 (text message from Prunty to Duff stating "might have work starting tomorrow, if so, are you available?"); *id*. ¶ 37 (text message from Duff to Prunty asking if "Pristine guys be needed this week or next?" to which Prunty replied that he would let Duff know).  Prunty allegedly also had the power to discipline and fire Duff. *Id*. ¶ 38.

Duff claims he was subject to discriminatory treatment at his workplace from August 2017 through his termination in October 2018. *Id*. ¶ 29.  He asserts that Ryder, who had assigned him to work in a toxic area, *id*. ¶ 31, "purposefully put minorities in the least favorable jobs and locations," i*d*. ¶ 32. He also alleges that on at least one occasion, he found three pieces of offensive graffiti on the wall of a men's bathroom on the job site. *Id*.  ¶¶ 47–49.  The graffiti included a racial epithet derogatory to African Americans and a reference to the KKK.  *Id*.  Although Duff did not make a complaint about the graffiti, he contends that "Defendants were aware or should have been made aware" of it.  *Id*. ¶ 50.  He asserts, however, that the graffiti was not "corrected or dealt with by management" while Duff remained on the LaGuardia Airport Project.  *Id*.  Island's Safety Coordinator allegedly held a meeting about "bullying and harassment at the workplace" due to complaints of racial discrimination, but it is unclear whether this happened before or after the graffiti was discovered.  *Id*. ¶ 51.

On August 22, 2018, Ryder appointed Duff as "Pristine Service's Lead for the Island Project." *Id*. ¶ 40 & Ex. B (letter from Pristine to its employees).  As Service Lead, Duff was responsible for keeping track of Pristine paperwork and enforcing Pristine's protocols and safety requirements.  *Id*. Ex. B.  A letter memorializing Duff's promotion instructed Pristine employees to inform Duff about all scheduling matters, including overtime worked, changes in shifts, and days missed.  *Id*.  The letter emphatically warned employees not to contact Island directly.  *Id*. (using all capital letters to tell

employees "DO NOT CALL" Island directly).  The letter also stated that Duff would have first access to overtime.  *Id*.

Duff alleges that, after his promotion, Prunty's behavior towards him changed.  Six days after Duff's promotion, Prunty—for the first time—accused Duff of taking long coffee breaks, which Duff denied.  *Id*. ¶ 42.  Prunty also stopped assigning Duff overtime, although Duff had previously received two hours of overtime per day.  *Id*. ¶¶ 43, 45.[3]  Duff asserts that Prunty did this because he "resented [Duff's] new leadership role and did not want an African-American in a high-ranking position."  *Id*. ¶ 44.  Caucasian workers were allegedly given overtime hours during this time.  *Id*. ¶ 69.  Further, Prunty allegedly began telling other workers not to work with Duff after his promotion.  *Id*. ¶ 62.

On October 10, 2018, Ryder terminated Duff from his employment at Island, but informed him that he remained employed at Pristine.  *Id*. ¶¶ 52–53.  Several days after Duff was terminated from Island, Prunty informed Duff that he had been terminated because he was late several times, he took long coffee breaks, he would "wander[] around" at work, and both of his foremen made complaints about Duff being unproductive.  *Id*. ¶¶ 55, 58.[4]  Duff denied these allegations.  *Id*.  Prunty also told Duff that Duff received a "mark-up" on wages because he worked for Pristine, a minority company.  *Id*. ¶ 56.  Duff responded by telling Prunty that he was a racist, and accused him of "only terminating [Duff] from Island in [order] to put fear in other black workers."  *Id*. ¶ 60.  Prunty replied by calling Duff "delusional."  *Id*. ¶ 61.

On October 12, 2018, Ryder terminated Duff from his employment at Pristine.  *Id*. ¶ 62. According to Duff, Ryder acknowledged that by promoting Duff he "may have put a target on [Duff's] back."  *Id*. ¶ 65.  After terminating Duff, Ryder allegedly stated that he did not understand why African-Americans use the "N" word amongst each other.  *Id*. ¶ 64.

---

[3] Duff alleges that both Island and Pristine denied him overtime, although the amended complaint only alleges facts demonstrating that Prunty, an Island employee, ceased assigning Duff overtime. *Id*. ¶ 46.
[4] The amended complaint is not clear as to whether this conversation occurred before or after Duff was terminated from Pristine.  In his opposition brief, however, Duff states that this conversation occurred before he was terminated from Pristine.  Pristine Opp. at 13.

Island employee Jimmy Berrios, Duff's former partner, purportedly told Duff he did not agree with Duff's firing, and suggested that the termination came to fruition because of Duff's August 2018 promotion. *Id.* ¶¶ 66–67. Duff asserts that he had an outstanding performance record at Pristine and Island. *Id.* ¶ 70. He further says that he believes he was hired only to fill a quota, and he was terminated for pretextual reasons masking Defendants' discriminatory animus, which he alleges was the true cause of his termination. *Id.* ¶¶ 70–71.

Duff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 28, 2019. *Id.* ¶ 14. The EEOC issued a right to sue letter on August 21, 2019. *Id.* ¶ 15. On November 8, 2019, Duff initiated this litigation, bringing claims of discrimination, hostile work environment, wrongful termination, and retaliation under federal, state, and local law. *See* Dkt. 1. After both Defendants filed motions to dismiss the complaint, Dkt. 17, 21, Duff filed an amended complaint, Dkt. 29. Both Defendants again moved to dismiss. Dkt. 30, 33.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the element of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (internal quotation marks omitted) (alterations adopted); *see also Rissman v. Chertoff*, No. 08-CV-7352 (DC), 2008 U.S. Dist. LEXIS 101514, 2008 WL 5191394, *4 (S.D.N.Y. Dec. 12, 2008) ("While the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff, bald contentions, unsupported characterizations, and

legal conclusions are not well-pleaded allegations and are insufficient to state a claim for which relief may be granted." (internal quotation marks and citations omitted)).

## DISCUSSION

### I. Duff's Employers

Title VII imposes liability for employment discrimination only on a plaintiff's "employer." 42 U.S.C. § 2000e(b). As a threshold matter, then, the Court must determine whether Duff has plausibly alleged that both Pristine and Island qualify as his employers. Pristine does not dispute that it employed Duff. Island, however, contends that it does not qualify as an employer as defined by Title VII. Island Mem. at 8–11. The Court agrees.

In his opposition to Island's motion to dismiss, Duff claims that he was an "actual employee" of Island. Island Opp. at 9. In his amended complaint, however, he pleads no facts to support this contention. Moreover, the exhibits to Duff's amended complaint suggest otherwise. Indeed, a letter from Pristine to its employees stated in all capital letters "PLEASE NOTE THAT YOU WORK FOR PRISTINE SERVICES Inc., NOT ISLAND." *See* Am. Compl. Ex. B. The Court thus concludes that Pristine, not Island, was Duff's actual employer.

It is true that Island may still be held liable under Title VII if it was Duff's "joint employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) ("[A]n employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer."). But a court will consider an entity a joint employer only "where there is sufficient evidence that the [entity] had immediate control over the other company's employees." *NLRB v. Solid Waste Servs.*, 38 F.3d 93, 94 (2d Cir. 1994). The Second Circuit has identified five factors that bear on the "immediate control" inquiry: "whether the alleged joint employer (1) did the hiring and

firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Felder v. United States Tennis Ass'n Inc*., No. 17-CV-5045 (ER), 2018 U.S. Dist. LEXIS 185508, 2018 WL 5621484, *4 (S.D.N.Y. Oct. 30, 2018).

Duff alleges that Island qualifies as his joint employer because it exercised significant control over his employment. Island Opp. at 10–12. To support this contention, he relies on the following allegations: he was supervised by Prunty, an Island employee whom he claims had the power to discipline, hire, and fire him; Island maintained records of his hours worked; Prunty assigned him hours and tasks; Island conducted an anti-discrimination training that Duff attended; and Duff was initially terminated from Island, not Pristine. *Id.* (citing Am. Compl. ¶¶ 27, 33, 38, 51, 52–53).

Several of these assertions are not born out by—if not contradicted by—the facts alleged in the complaint. For example, Duff asserts that Prunty had the power to fire him, and that he was terminated from Island before he was terminated from Pristine. Yet Duff concedes that he was terminated—both from the LaGuardia Airport Project and from employment with Pristine—by Ryder, a Pristine employee. Am. Compl. ¶¶ 52, 63.[5] Duff further asserts that Prunty assigned him hours and tasks. But the complaint alleges only that Prunty sent Duff several text messages about potential work opportunities, not that he actually assigned Duff any hours or any tasks. Am. Compl. ¶¶ 34–37.

Moreover, those allegations supported by the complaint do not amount to a plausible claim of control. Instead, these facts suggest only "the minimal level of oversight that any" contractor would

---

[5] Duff alleges that he believes that Prunty "either recommended [Duff's] termination or actually terminated [Duff's] employment from Pristine after [Duff] accused [him] of being a racist." Am. Compl. ¶ 125. Yet he has pled no facts articulating the basis for this belief. Critically, he has not explained how Prunty would have the power to terminate him from Pristine when Prunty did not work for Pristine himself. The Court thus declines to credit this bald assertion as a well-pleaded fact. *See Kavanagh v. Zwilling,* 578 Fed. Appx. 24, 24 (2d Cir. 2014) ("We do not accept as true conclusions unsupported by the facts alleged, legal conclusions, bald assertions, or unwarranted inferences."); *see also Pauwels v. Deloitte LLP,* 19-CV-2313 (RA), 2020 U.S. Dist. LEXIS 28736, 2020 WL 818742, *13 (S.D.N.Y. Feb. 19 2020) (declining to accept an allegation as a well pleaded fact when the plaintiff alleged the defendant knew information but "d[id] not offer any particular facts as to how [the defendant] would have known" it).

7

naturally exercise over laborers working on the contractor's worksite. *Conde v. Sisley Cosmetics USA, Inc.*, No. 11-CV-4010 (RJS), 2012 U.S. Dist. LEXIS 72726, 2012 WL 1883508, *3 (S.D.N.Y. May 23, 2012).

Judge Sullivan's decision in *Conde v. Sisley Cosmetics USA Inc.* is illustrative of this point. In that case, the plaintiff was hired by Defendant Sisley to work at Sisley's cosmetics counter at Saks Fifth Avenue. *Id*. at *1. The plaintiff was subject to the Saks dress code and attended mandatory meetings held by Saks. *Id*. at *3. She was monitored by a Saks employee to ensure she was complying with Saks' workplace rules and was told that she would be terminated if she failed to comply with said rules. *Id*. After accusations of misconduct were made against the plaintiff, she was terminated from her position at Saks, but remained employed by Sisley. *Id*. at *4. The Court found that the plaintiff failed to plausibly plead that Saks was her joint employer. *Id*. Her termination from Saks did not support her claim of joint employment, because she remained employed by Sisley after the fact, and "an entity that has the power to request that an employee be moved but not to cause her to be terminated is not a joint employer." *Id.* The Court found that the remainder of the plaintiff's allegations merely "suggest[ed] the minimal level of oversight that any store would naturally exercise over vendors operating on its premises to ensure order and good treatment of their customers" rather than the level of control needed to plausibly plead joint employment. *Id*. at *3. Ultimately, the Court concluded that "[f]ar more than a basic level of oversight is required to plausibly allege a joint employment relationship." *Id*.

The evidence here mirrors that presented in *Conde*. As stated above, that an Island employee supervised Duff, maintained records of his hours, and allegedly had the power to discipline him amounts only to "the minimal level of oversight that any" contractor would naturally exercise over laborers working on the contractor's worksite. *Id*. Similarly, that Island conducted an anti-discrimination training merely reflects Island's interest in managing its workplace. *See Hugee v. SJC Group, Inc.*, No. 13-CV-0423 (GBD), 2013 U.S. Dist. LEXIS 116471, 2013 WL 4399226, *7 (S.D.N.Y. Aug. 13, 2013)

(concluding that although the defendant provided training to the plaintiff, the plaintiff had "fail[ed] to allege that the training . . . was beyond quality control" and thus it was not evidence of joint employment). Moreover, like the plaintiff in *Conde*, Duff remained employed by Pristine after his removal from the LaGuardia Airport Project. Am. Compl. ¶¶ 52–53; *see also Liotard v. FedEx Freight Corp.*, No. 14-CV-2083 (NSR) 2016 U.S. Dist. LEXIS 34754, 2016 WL 1071034, *5 (S.D.N.Y. Mar. 17, 2016) (holding that an allegation that defendant terminated plaintiff's placement with defendant did not suffice to render defendant a joint employer when plaintiff's employment with her actual employer continued).

Accordingly, Duff has failed to plausibly plead that Island is his employer for purposes of Title VII liability. The Court thus grants Island's motion to dismiss and for the remainder of this opinion will only consider those allegations raised against Pristine.

## II. Discrimination

Duff alleges that Pristine discriminated against him on the basis of his race. Am. Compl. ¶¶ 72–80. To support his claim, Duff asserts that Ryder, a Pristine employee, purposefully put minorities in the least favorable jobs, *id*. ¶ 32, and on one occasion, made a statement to Duff about others' use of the "N" word, *id*.¶ 64. Duff also asserts that "he was racially discriminated against by not being assigned overtime hours and having his hours capped at 40 hours per week by Island and Pristine." *Id*. ¶ 46.

To make a prima facie case of discrimination under Title VII, a plaintiff must show "(1) that []he is a member of a protected class, (2) that []he was qualified for [his] position . . . , (3) that []he suffered an adverse employment action, and (4) [that he] can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis omitted). "An inference of discrimination can arise from circumstances including, but not limited to . . . the more favorable treatment of employees not in the protected group." *Littlejohn*, 795 F.3d at 312. "In relying on this theory, however, a plaintiff must identify comparators and show that the comparators are 'similarly situated in all material respects to the individuals with

9

whom []he seeks to compare [him]self.'" *Williams v. N.Y. City Dep't of Correction*, 19-CV-5200 (RA), 2020 U.S. Dist. LEXIS 16241, 2020 WL 509180, *4 (S.D.N.Y. Jan. 30 2020) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39–40 (2d Cir. 2000)).

Even assuming that Duff satisfies the first three elements of this analysis, his discrimination claim fails because he cannot sustain his burden of alleging facts demonstrating that Pristine acted with discriminatory motivation. Two of Duff's three allegations—that Pristine assigned minorities to the least favorable jobs and that Pristine denied Duff overtime—only raise an inference of discrimination if similarly situated persons outside Duff's protected group were treated differently. Although Duff alleges that "white workers" received overtime when Duff did not, Am Compl. ¶ 69, Duff has failed to identify these workers, and has provided insufficient information to allow the Court to conclude that they were similarly situated to Duff in all materials respects. *See Beverley v. N.Y. City Health & Hosps. Corp.*, No. 18-CV-8486 (ER), 2020 U.S. Dist. LEXIS 55946, *11 (S.D.N.Y. Mar. 30, 2020) (noting that "[e]mployment characteristics that can support a finding that two employees are similarly situated include . . . seniority, performance, and specific work duties."). For example, it is not clear from the Complaint whether these other employees worked for Pristine or Island, who assigned them overtime, whether they were in a superior or subordinate position to Duff, and/or whether they did comparable work to Duff. Without this information, these allegations do not raise an inference of discrimination.

Duff's third allegation—that Ryder made a comment to Duff about the "N" word—similarly fails to raise an inference of discrimination. Ryder allegedly told Duff "that he does not understand why African-Americans attempt to desensitize the . . . 'N' word by using the word amongst each other." Am. Compl. ¶ 64. Pristine argues that this comment does not convey racial animus, but rather sensitivity to the word's offensive nature. Pristine Reply at 6. While Pristine's interpretation may be a reasonable one, either way, the statement cannot alone sustain Duff's claim of discrimination because it is a "stray remark"; that is, a statement lacking a causal nexus connecting it to an adverse employment action. *See*

10

*Feldman v. Looms*, 198 F.3d 233, 233 (2d Cir. 1999) (unpublished table decision). Although Ryder made this statement around the time he terminated Duff's employment, nothing about the statement connects it to the decision to terminate him. "[A]lthough a stray remark may lend support to [a] plaintiff's . . . discrimination claim when considered with other evidence, 'by itself such remarks are usually not sufficient proof to show . . . discrimination.'" *McNamara v. Associated Press*, 40 F. Supp. 3d 345, 355 (S.D.N.Y. 2014) (quoting *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000)) (alterations adopted).

In his opposition brief, Duff compares his discrimination claim to that raised in *Toombs v. New York City Housing Authority*, in which the court denied a motion to dismiss upon finding that the plaintiff's allegations raised an inference of discrimination. Pristine Opp. at 10 (citing *Toombs v. N.Y. City Hous. Auth*, No. 16-CV-3352 (LTS), 2017 U.S. Dist. LEXIS 45544, 2017 WL 1169649 (S.D.N.Y. Mar. 27, 2017)). The Court finds *Toombs* inapposite. In that case, the Hispanic defendant allegedly told his majority African-American workforce "I want you out of here so I can bring in my people," and then proceeded to terminate six of his 21 employees—all of whom were African-American—and replace them with Hispanic workers. *Id*. at *1. Duff alleges no conduct of the sort here.

In sum, Duff fails to plausibly plead that Pristine acted with discriminatory motivation, and so his claim of race discrimination must be dismissed.

### III. Wrongful Termination

Duff also alleges that Pristine wrongfully terminated him, another form of discrimination actionable under Title VII. Am. Compl. ¶¶ 76–79. Wrongful termination claims employ the same analysis as do other claims of discrimination under Title VII. *See Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 220 (E.D.N.Y. 2018) ("To establish a *prima facie* claim of wrongful termination, a plaintiff must demonstrate that: (1) []he is a member of a protected class; (2) []he was qualified for the position; (3) []he suffered an adverse employment action; and (4) the adverse employment action

occurred under circumstances giving rise to an inference of discrimination."). As with other Title VII claims, a plaintiff alleging wrongful termination must allege that his employer terminated him "*because of*" his race. 42 U.S.C. § 2000e-2(a)(1) (emphasis added).

Duff alleges he was twice terminated: first from the LaGuardia Airport Project, and then, two days later, from Pristine. Am. Compl. ¶¶ 52, 63. As a preliminary matter, it is not clear to the Court that Duff's removal from the LaGuardia Airport Project qualifies as a termination, for Duff remained employed by Pristine after this occurred. Am. Compl. ¶¶ 53, 59. Even if Duff's removal from the LaGuardia Airport Project does qualify as a termination, however, Duff has pled no facts that indicate that this termination occurred for discriminatory reasons. Duff alleges that the reasons provided to him as the basis for his removal from the LaGuardia Airport Project—namely, he took long coffee breaks, he was seen "wandering around," and foremen complained that he was unproductive—are pretextual. *See* Am. Compl. ¶¶ 55, 58. Yet Duff has pled no facts to demonstrate that the true reason he was fired was racial bias. He asserts that Prunty commented upon his removal that "Duff gets a 'mark-up' on wages because Pristine is a minority company." Am. Compl. ¶ 56. Defendants argue that this comment does not convey racial animus towards Duff, given that it concerns only Pristine's status as a minority business without reference to Duff or his race. Even if the statement arguably espouses racial animus, however, "remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007). Duff alleges in the complaint that Ryder removed him from the LaGuardia Airport Project, not Prunty. Am. Compl. ¶ 52. Duff thus cannot rely upon this statement to raise the inference that he was removed from the LaGuardia Airport Project for discriminatory reasons.

Duff pleads even fewer facts regarding his termination from Pristine. He alleges that after Ryder terminated him from Pristine, Ryder made the comments cited above: "that he does not understand why

African-Americans attempt to desensitize the word 'N' word by using the word amongst each other." Am. Compl. ¶ 64. For the reasons noted above, this stray remark alone, even accepting the meaning Plaintiff attributes to it, cannot provide the basis for Duff's wrongful termination claim. *See supra*; *see also Tsismentzoglou v. Milos Estiatorio Inc.*, 18-CV-9664 (RA), 2019 U.S. Dist. LEXIS 90198, 2019 WL 2287902, *4 (S.D.N.Y May 29, 2019) ("[A] stray remark, by-itself, cannot satisfy a claim for employment discrimination." (citing *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998))).

Duff also alleges that his termination stemmed from his August 2018 promotion. Am. Compl. ¶¶ 65, 67. But Duff has pled no facts connecting his race to his August 2018 promotion or the alleged backlash to it. He states that "Prunty resented [his] new leadership role [because he] did not want an African-American in a high-ranking position." Am. Compl. ¶ 44. Even if the Court were to give this speculative and conclusory statement weight, it does not support Duff's claim for wrongful termination, because—as stated above—Prunty did not fire Duff, Ryder did. Am. Compl. ¶¶ 52, 63.

Duff has thus failed to plausibly plead a claim for wrongful termination.

### IV. Hostile Work Environment

Duff further alleges that Pristine discriminated against him by "creat[ing] and condon[ing]" a hostile work environment. Am. Compl. ¶ 77.

"A hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted). "In determining whether the conduct was sufficiently severe or pervasive, courts look at '(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiffs work; and (5) what psychological harm, if any, resulted.'" *Sotomayor v. City of New York*, 862

F. Supp. 2d 226, 260–61 (E.D.N.Y. 2012) (*quoting Aulicino v. N.Y.City Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009)); *see also Rivera v. Rochester Genesee Reg. Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2012) ("In considering whether a plaintiff has met this burden, courts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." (internal quotation marks omitted) (alterations adopted)). A plaintiff's subjective perception of hostility is insufficient to survive a motion to dismiss. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 604 (2d Cir. 2006) ("A jury must be able to conclude that the work environment both objectively was, and subjectively was perceived by the plaintiff to be, sufficiently hostile to alter the conditions of employment for the worse."). Further, to be actionable under Title VII, the mistreatment alleged to make the workplace hostile must "occur[] *because of* an employee's protected characteristic, such as race or national origin." *Rivera*, 743 F.3d at 20 (internal quotation marks omitted) (emphasis in original).

Duff's hostile workplace claim appears to be premised on a single incident, in which he found the three pieces of offensive graffiti on the wall of a men's bathroom on the job site, at least one of which was clearly derogatory and/or threatening to African Americans. FAC ¶¶ 47–49.[6] The Second Circuit has held that as a general matter, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment . . . there must be more than a few isolated incidents of racial enmity.'" *Aulicino*, 580 F.3d at 83 (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110–11 (2d Cir. 1997)). Although "a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace,"

---

[6] The only other facts Duff arguably pleads in support of his hostile work environment claim are that (1) he was accused of taking long coffee breaks, FAC ¶ 42 and (2) Prunty told other workers not to work with him, FAC ¶ 62. Duff has pled no facts indicating that either of these incidents occurred *because of* Duff's race, and they thus do not support this claim. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that . . . a hostile work environment . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic.").

14

*Feingold v. N.Y.*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted) (alterations adopted), that single act must be "extraordinarily severe," to sustain a claim, *Alfano*, 294 F.3d at 374. Comparing the facts alleged here to those presented in cases in which they were found to be "extraordinarily severe," the Court concludes that this bar has not been met. *See, e.g., Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) (holding that single instance of drugging and raping a co-worker created a hostile work environment). Duff's single allegation of graffiti thus does not suffice to sustain his hostile workplace claim.

In his memorandum of law in opposition to Pristine's motion to dismiss, Duff cites cases in which courts concluded that the plaintiff plausibly pled a hostile work environment with evidence of "anonymous harassment, such as racist graffiti." Pristine Opp. at 16–18 (citing eleven cases, the majority of which are from outside the Second Circuit). Yet the Court finds these comparisons unavailing, for in each of the cases cited, the plaintiff pled additional incidents of harassment that Duff has failed to plead here. *See*, *e.g.*, *Petrosino v. Bell Atl.*, 385 F.3d 210, 214 (2d Cir. 2004) (plaintiff presented evidence of "persistent sexually offensive remarks and sexual graffiti" as well as "specific comments or actions towards" her); *Wills v. Key Food Stores Co-Op, Inc.,* No. 95-CV-5333 (SJ), 1997 U.S. Dist. LEXIS 21653, 1997 WL 168590, *4 (E.D.N.Y. Apr. 9, 1997) (African American plaintiff's colleagues "constantly" referred to him using racial epithets); *see also Tademy v. Union Pac. Corp.,* 614 F.3d 1132, 1144–46 (10th Cir. 2008) (plaintiff witnessed both anonymous bathroom graffiti and the display of a noose).

Even if the Court were to conclude that Duff adequately pled a hostile workplace, his claim would still fail because he has alleged no facts demonstrating that Pristine "was negligent in controlling working conditions." *Vance v. Ball State Univ.,* 570 U.S. 421, 424 (2013). When the discriminatory conduct is perpetrated by a co-worker or a non-employee, "the plaintiff must demonstrate that [his] employer 'failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should

15

have known, about the harassment yet failed to take appropriate remedial action.'" *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (quoting *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)). "In determining the appropriateness of an employer's response, [courts] look to whether the response was 'immediate or timely and appropriate in light of the circumstances, particularly the level of control and legal responsibility the employer has with respect to the employee's behavior.'" *Id.* (citing *Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111 (8th Cir. 1997)) (alterations adopted). Duff asserts that the graffiti "was never corrected or dealt with by management at all times [he] was employed by Pristine . . . even though [Pristine] w[as] aware or should have been made aware of the signs." Am. Compl. ¶ 50. Yet he pleads no facts to support this conclusory statement. He concedes that he never reported the graffiti to his employer, Am. Compl. ¶ 50, nor does he contend that anyone else reported the graffiti to Pristine. Furthermore, Duff has not alleged that Pristine had control over the bathroom, or that the bathroom was regularly used by Pristine employees. *See Wright v. Monroe Cmty. Hosp.*, 493 Fed. Appx. 233, 235 (2d Cir. 2012) (affirming dismissal because employer could not be held responsible for acts of parties not within its control).

In sum, Duff's hostile workplace claim fails on two fronts: he has failed to plausibly plead his workplace was subject to severe or pervasive abuse or that Pristine was negligent in maintaining the workplace.

### V. Retaliation

Duff next alleges that Pristine retaliated against him when it terminated him. Am. Compl. ¶ 125. Although he does not raise a federal law claim for retaliation in his amended complaint, he states in his opposition to Pristine's motion to dismiss that he has "[p]lausibly [a]lleged [r]etaliation [u]nder [f]ederal . . . [l]aw." Pristine Opp. at 19. The Court will now consider whether he has plausibly pled a claim for retaliation under Title VII.

"In order to establish a prima facie case of retaliation, [a plaintiff] must show that: (1) []he engaged in a protected activity; (2) h[is] employer was aware of this activity; (3) the employer took adverse employment action against h[im]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Schiano*, 445 F.3d at 608 (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)). "Regarding the first element, an activity is considered protected under one of two clauses: (i) the 'opposition clause,' which proscribes an employer from retaliating against an employee 'because she opposed any practice made unlawful by Title VII'; and (ii) the 'participation clause,' which 'makes it unlawful to retaliate against an individual because she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under' Title VII.'" *Jeanty v. Precision Pipeline Sols. LLC*, No. 18-CV-7721 (VB), 2019 U.S. Dist. LEXIS 129463, 2019 WL 3532157, *5 (S.D.N.Y. Aug. 2, 2019) (quoting *Littlejohn*, 795 F.3d at 316).

Even assuming that Duff satisfies the other elements of this analysis, his retaliation claims fails because he has not plausibly pled that Pristine was aware that he engaged in protected activity. Duff alleges that he engaged in a protected activity when he "told []Prunty that he believed that he was a racist and that he was only terminating [Duff] from Island in other to put fear in other black workers." Am. Compl. ¶ 60. But Prunty was Island employee, not a Pristine employee. *Id.* ¶ 33. Duff has pled no facts that indicate that Pristine was or should have been aware of a conversation that occurred between Prunty and Duff,[7] nor has he otherwise pled that he engaged in any protected activity about which Pristine was aware. Duff has thus failed to plausibly plead a claim for retaliation.

## VI.    State and Local Law Claims

Finally, Duff brings claims of discrimination and retaliation under state and municipal law. Am. Compl. ¶¶ 88–128. Although federal district courts have supplemental jurisdiction over non-federal law

---

[7] Although Duff states in his complaint that he believes that Prunty "recommended [Duff's] termination," the Court declines to accept this speculative assertion as a well-pleaded fact. *See supra*, n. 6.

17

claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." *Id*. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Here, the Court has granted Defendants' motions to dismiss as to all of Duff's federal claims. "Because the Court addressed and dismissed these claims early in the litigation, declining jurisdiction over the remaining state and municipal claims would not disserve the principles of judicial economy, convenience, or fairness." *See Anderson v. New York City Dep't of Fin.*, No. 19-CV-7971 (RA), 2020 U.S. Dist. LEXIS 70428 (S.D.N.Y Apr. 21, 2020). For this reason, the Court declines to exercise supplemental jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted. The Clerk of Court is respectfully directed to terminate the motion pending at docket entries 39 and 33 and close this case.

SO ORDERED.

Dated: February 19, 2021
New York, New York

RONNIE ABRAMS
United States District Judge